UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARK W. BLOND, JR.,

                              Plaintiff,

    -vs-

                              10-CV-0598

THE CITY OF SCHENECTADY,
MAYOR BRIAN STRATTON,
SPD CHIEF CHAIRES,
SPD OFFICER DANIEL MCDONALD,
SPD OFFICER ST. ONGE (PHONETIC SPELLING),
SPD DET. SHERRI BARNES, INDIVIDUALLY,
AND IN THEIR OFFICIAL CAPACITIES,.

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Plaintiff commenced the instant action under 42 U.S.C. § 1983 against officials and employees of the City of Schenectady alleging his constitutional rights were violated while he was arrested and interrogated by the police. Defendants now move to dismiss pursuant to Fed. R. Civ. P. 12(c). Plaintiff cross-moves to amend his Complaint.

**I.    FACTS**

For purposes of the instant motion, the following factual allegations are deemed to be true and all reasonable inferences are drawn in Plaintiff's favor.

On May 4, 2008, Plaintiff walked out the back door of his house. Defendant City of Schenectady Police Officer McDonald approached Plaintiff in an aggressive manner and "nearly broke the plaintiff's arm" before placing him in handcuffs. Plaintiff did not resist Officer McDonald. Without being informed of his Miranda warnings or advised of the charges against him, Plaintiff was placed in the back of McDonald's car so McDonald could question third parties. While in the car, Plaintiff asked Officer St. Onge to "disable his car that was parked in the back yard of the apartment." Officer St. Onge slammed the door shut in Plaintiff's face. "[T]he plaintiff made a second attempt to have his property protected with the same result of officer St. Onge slamming the police car door shut on the plaintiff." "This made the already alcohol induced plaintiff angry, in which he began hitting his head against the police car window (rear passenger side)." Officer St. Onge observed Plaintiff hitting his head against the window, but did nothing. Plaintiff hit his head against the police car window 4-5 times, after which the window shattered.

Plaintiff was not bleeding and did not sustain any cuts from having broken the car window. McDonald "ran from the backyard to the front and tried to rip the plaintiff out of the window that was broken." McDonald "then decided to open the police car door, where he and officer St. Onge tried to push [Plaintiff] into a [f]ire [h]ydrant." "[P]laintiff was instead pushed by both officer's [sic] to the ground where the glass was, [where] both officer's [sic] began kneeing the plaintiff in his lower back and the back side of his neck." Plaintiff's face was "pressed into the glass on the ground." McDonald sprayed a can of pepper spray in Plaintiff's face.

Plaintiff was left "on the ground with his face burning in pain" for approximately 30 minutes until another vehicle arrived to transport him to the police station. During this time,

Plaintiff asked if he could use the hose to rinse the pepper spray from his eyes and face. The officers did not respond to Plaintiff's request.

Plaintiff was transported to the police station where pictures were taken of his face. After the pictures were taken, Plaintiff was permitted to rinse his face and eyes. Plaintiff believed he had glass in his eyes "from the oficer's [sic] pressing his face into the glass on the ground." An ambulance was called and Plaintiff was taken to the hospital. "The nurse flushed out the plaintiff's eyes and found no glass." "The plaintiff was released from the hospital feeling dizzy back into the custody of the Schenectady police, where Defendant Detective Sherri Barnes question[ed] the plaintiff without his attorney and after his head injury."

## II.     STANDARD OF REVIEW

### a.     **Motion for Judgment on the Pleadings**

Defendants move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). A Rule 12(c) motion is "designed to provide a means of disposing of cases when the material facts are not in dispute between the parties." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed. 2010). A motion under Rule 12(c) is only useful if "all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court." Id.

The standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as for a Rule 12(b)(6) motion to dismiss. Cleveland v. Caplaw Enter., 448 F.3d 518, 521 (2d Cir. 2006); Sharpe v. Taylor, 2009 WL 1743987 at *6 (N.D.N.Y. June 18, 2009). The Court must "accept as true the factual allegations of the complaint, and draw all inferences in favor of the pleader." Rosner v. Bank of China, 349 F. App'x 637, 638 (2d Cir.

2009). To survive a motion to dismiss, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, ---U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

The Court recognizes Plaintiff is proceeding pro se and, accordingly, his pleadings are held to a "less stringent standard than formal pleadings drafted by lawyers." Ferran v. Town of Nassau, 11 F.3d 21, 22 (2d Cir. 1993) (quoting Hughes v. Rowe, 449 U.S. 5, 9 (1980)). Plaintiff's pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006); Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006); Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006); Forsyth v. Fed'n Employment & Guidance Serv., 409 F.3d 565, 569 (2d Cir. 2005). However, *pro se* litigants are not exempt "from compliance with relevant rules of procedural and substantive law." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983).

### b.   Motion to Amend the Complaint

Plaintiff cross-moves to file an amended complaint. A party seeking to amend a pleading more than 21 days after the filing of a responsive pleading may do so with the consent of all parties or with leave from the Court. Fed. R. Civ. P. 15(a)(2). Plaintiff was previously advised that:

> Plaintiff may only amend his Complaint by motion that is in compliance with Local Rule 7.1., including a notice of motion and a supporting affidavit. Also, any motion to amend or supplement must be accompanied by an affidavit (see L.R. 7.1(a)(2)). Furthermore, "[a]n unsigned copy of the proposed amended pleading must be attached to a motion brought under Fed. R. Civ. P. 14, 15, 19-22." L.R. 7.1(a)(4).

> This proposed amended pleading must be a complete pleading, which will supersede the original pleading in all respects. Id. Plaintiff's proposed amended pleading shall not incorporate by reference any portion of any prior pleading. Id.

Dkt. No. 9. Although Plaintiff has moved for leave to amend, he has not attached an unsigned copy of the proposed amended pleading to his motion papers and his motion does not "set forth specifically the proposed amendments and identify the amendments in the proposed pleading." Local Rule 7.1(a)(4). Because Plaintiff has not complied with the requirements of Local Rule 7.1, his motion is DENIED with leave to renew.

### III.     DISCUSSION

Defendants move to dismiss the Complaint in its entirety. For Plaintiff to succeed on a claim under 42 U.S.C. § 1983 claim, he must prove that the defendant, while acting under color of state law, deprived him of his rights, privileges, or immunities secured by the Constitution or laws of the United States. Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010); see 42 U.S.C. § 1983. A civil rights complaint "must contain specific allegations of fact which indicate a deprivation of constitutional [or federal statutory] rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987). A defendant's personal involvement in a § 1983 claim is a prerequisite to an award of damages. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). A plaintiff must allege specific facts to demonstrate that a particular defendant was personally or directly involved in the violation. Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001). The requirement of personal involvement may be satisfied by showing that the defendant: (1) personally participated in the violation; (2) was grossly negligent in supervising subordinates who committed the wrongful acts; or (3) exhibited deliberate indifference by failing to act on information indicating the unconstitutional

acts were occurring.  Provost, 262 F.3d at 154; see also Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

### a.     The City of Schenectady

The City of Schenectady moves to dismiss the claims against it on the ground that Plaintiff has failed to demonstrate a violation of any rights caused by municipal policy or custom.  A municipality may not be held liable under Section 1983 solely on the doctrine of *respondeat superior*.  Monell v. Dep't of Soc. Services of City of New York, 436 U.S. 658, 691 (1978).  To be held liable for a constitutional violation, a municipality must have adopted a policy or custom that caused a deprivation of constitutional rights, or it must have directly caused an employee to violate another's constitutional rights.  Monell, 436 U.S. at 692; see Ximines v. George Wingate High Sch., 516 F.3d 156, 160 (2d Cir. 2008).  Here, Plaintiff fails to allege sufficient facts to support a reasonable inference that a municipal policy or custom resulted in a deprivation of his rights.  Accordingly, Plaintiff's claims against the City of Schenectady must be DISMISSED.

### b.     The Mayor and the Chief of Police

The Mayor and the Chief of Police move to dismiss the claims against them on the ground that Plaintiff failed to plead any personal involvement by them.  As previously noted, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006).  Here, Plaintiff does not allege any facts plausibly indicating that either the Mayor or the Chief of Police Chief were personally involved in any alleged constitutional violations arising from his arrest, incarceration, or prosecution.  Plaintiff similarly fails to plead sufficient facts to state a claim under the standards for supervisory liability applicable to § 1983 claims.

Accordingly, Plaintiff's claims against the Mayor and the Chief of Police must be DISMISSED.

### c. **False Arrest, Malicious Prosecution, Failure to Provide Miranda Warnings, and Coercive Questioning**

Defendants move to dismiss any false arrest and malicious prosecution claims on the ground that Plaintiff does not allege that the criminal charges were disposed of in his favor. Plaintiff does not allege in his Complaint that any criminal actions against him were disposed of in his favor. While the Complaint does allege facts suggesting that Plaintiff was arrested, it makes no claim that the arrest was without probable cause. Accordingly, any malicious prosecution and false arrest claims must be DISMISSED.

Defendants move to dismiss any claim concerning the failure to administer Miranda warnings on the ground that it does not give rise to a private cause of action for damages. A Section 1983 claim cannot stand solely on the basis of an alleged failure to administer Miranda warnings. Deshawn E. by Charlotte E. v. Safir, 156 F.3d 340, 346 (2d Cir. 1998) ("[P]laintiffs cannot base a § 1983 claim solely on a law enforcement officer's failure to administer Miranda warnings. . . ."); Neighbor v. Covert, 68 F.3d 1508, 1510-1511 (2d Cir. 1995) ("[E]ven if we were to assume that [the plaintiff's] Miranda rights had been violated, that violation, standing alone, would not form a basis for liability under § 1983."). There is no allegation that coercion was applied to obtain a waiver of Plaintiff's rights against self-incrimination and/or to obtain a inculpatory statements or that any such statements were then used against Plaintiff in criminal proceedings. Accordingly, Plaintiff fails to state a claim upon which relief can be granted. Id. Further, because it appears that Plaintiff is currently incarcerated for crimes for which he was arrested in May 2008, any such claims may run

afoul of the rule set forth in Heck v. Humphrey, 512 U.S. 477, 486-89 (1994) (a Section 1983 suit for damages that "would necessarily imply the invalidity of [the plaintiff's] conviction or sentence" is not cognizable, unless the plaintiff can show that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.").

### d.      Inadequate Medical Care

To the extent Plaintiff asserts a Fourteenth or Eighth Amendment claim of inadequate medical care, any such claim must be dismissed because he failed to allege facts plausibly suggesting an unconstitutional deprivation of medical treatment. To establish such a claim, Plaintiff must show that defendants were deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976); Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000); Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). The deliberate indifference standard contains both an objective element and a subjective element. The former requires that the alleged deprivation of care be sufficiently serious in objective terms: the plaintiff's condition must present a "condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway, 37 F.3d at 66. The subjective element requires a showing that the defendants were aware of plaintiff's serious medical needs and consciously disregarded a substantial risk of serious harm. Id.

Here, Plaintiff's allegations against Defendants are insufficient to establish a constitutional deprivation. Plaintiff fails to allege a serious medical condition for which he sought and was denied treatment. Although Plaintiff was sprayed with pepper spray and he was not permitting to rinse his eyes for thirty to sixty minutes, this is insufficient to state a

claim. See Strassner v. O'Flynn, 2006 WL 839411, at *8 (W.D.N.Y. 2006) (and cases cited therein) (exposure to temporary discomfort of pepper spray is not a serious medical need). Plaintiff similarly fails to allege what harm, if any, resulted from the delay in treatment. Moreover, there are insufficient allegations of deliberate indifference to any medical need. Once he was brought to the police station and pictures were taken, Plaintiff was permitted to rinse his face. To the extent Plaintiff complained of glass in his eye (which could constitute a serious medical need), an ambulance was called and Plaintiff was taken to the hospital where a nurse rinsed his eye and did not find any glass. Accordingly, Plaintiff's claim of inadequate medical care must be DISMISSED.

### e. Excessive Force and Failure to Intervene

Defendants next move to dismiss the excess force and failure to intervene claims. When evaluating an excessive use of force claim under the Fourth Amendment, "courts should examine whether the use of force is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to [the officers'] underlying intent or motivation.'" Jones v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)). Courts measure the reasonableness of the use of force by considering "the facts and circumstances of each particular case, including the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest." Parmley, 465 F.3d at 61 (quoting Thomas v. Roach, 165 F.3d 137, 143 (2d Cir. 1999)).

A police officer may use some degree of force when making an arrest, but the amount of force "must be reasonably related to the nature of [the] resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." Sullivan v.

Gagnier, 225 F.3d 161, 166 (2d Cir. 2000).  The court must examine the totality of the circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Graham, 490 U.S. at 396.  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id.  " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment."  Id.  Dismissing an excessive force claim is appropriate where "no reasonable fact finder could conclude that the officers' conduct was objectively unreasonable."  Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 123 (2d Cir. 2004).  For a plaintiff to prevail on a motion to dismiss, he must show that "no rational jury could [find] that the force used was so excessive that no reasonable officer would have made the same choice."  Lennon v. Miller, 66 F.3d 416, 426 (2d Cir. 1995).

   Defendants contend that the use of pepper spray by an arresting officer does not by itself rise to the level of excessive use of force.  In some cases, an unconstitutional act or injury may be so *de minimis* that the act cannot rise to the level of a constitutional violation as a matter of law.  Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993) ("[A] *de minimis* use of force will rarely suffice to state a constitutional claim.").  The Second Circuit has noted, however, that "infliction of pepper spray on an arrestee has a variety of incapacitating and painful effects . . . and, as such, its use constitutes a significant degree of force."  Tracy v. Freshwater, --- F.3d ----, ----, 2010 WL 4008747 at *7 (2d Cir. Oct. 14, 2010).  "Accordingly, a number of our sister circuits have made clear that it should not be used lightly or gratuitously against an arrestee who is complying with police commands or otherwise poses no

immediate threat to the arresting officer." Id.  In Tracy, the Second Circuit held that the use of pepper spray on an individual who was handcuffed and was not offering physical resistance could be unreasonable under the circumstances.  Id.  Although Plaintiff admits to being drunk and angry and to having broken out the window of the police car, he also claims to have been handcuffed and placed on the ground with two police officers on top of him at the time he was pepper sprayed.  These allegations are sufficient to plausible state a claim for the use of excessive force against the officer using the pepper spray and for a failure to intervene against the officer who was present but failed to intercede.  O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988).

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED as follows:

a.   the claims against the City of Schenectady, the Mayor, and the Chief of Police are DISMISSED IN THEIR ENTIRETY; and

b.   and claims alleging malicious prosecution, false arrest, the failure to provide medical care, or arising out of the failure to administer Miranda warnings are DISMISSED.

In all other regards, the motion to dismiss is DENIED.  Plaintiff's motion to for leave to amend his original complaint is DENIED WITH LEAVE TO RENEW UPON PROPER PAPERS. IT IS SO ORDERED.

Dated: October 26, 2010

Thomas J. McAvoy
Senior, U.S. District Judge